USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/6/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PAUL SALADINO, MD,

                    Plaintiff,

-against-

FRANK TUFANO and
FRANKIE'S FREE-RANGE MEAT, LLC,

                    Defendants.

20-cv-9346 (NSR)(JCM)

**ORDER & OPINION
ADOPTING IN PART THE
REPORT & RECOMMENDATION**

NELSON S. ROMÁN, United States District Judge:

Plaintiff Paul Saladino, M.D. ("Plaintiff" or "Dr. Saladino"), a licensed physician, commenced this action asserting, among other things, claims for defamation, violations of 15 U.S.C. § 1125 (trademark infringement), and violations of New York G.B.L. ("GBL") §§ 148 and 349, seeking statutory and monetary damages against Frank Tufano ("Defendant Tufano"). (ECF No. 1.) On February 16, 2021, Plaintiff filed an amended complaint adding Defendant Frankie's Free-Range Meat, LLC ("Free Range" or "Defendant Free Range") as an additional party. (ECF No. 11, FAC.) On January 30, 2025, the Court issued an order holding Defendants Tufano and Free Range in default (ECF No. 59) and referred the matter to Magistrate Judge Judith C. McCarthy ("MJ McCarthy") to schedule an inquest and issue a Report and Recommendation ("R&R") on the assessment of damages, including compensatory and statutory damages, reasonable attorney fees, and costs. (R&R, ECF No. 60.)

Presently before the Court is MJ McCarthy's R&R, wherein she recommends that the Court enter judgment in favor of Plaintiff awarding $52,500.00 in punitive damages and $1.00 in nominal damages as against Defendants Tufano and Free Range, jointly and severally, on the defamation claim, $100,000.00 in statutory damages pursuant to 15 U.S.C. § 1125, $1,000.00 in statutory damages pursuant to GBL § 349, and attorney's fees and costs. (ECF No. 116.) On October 31,

1

2025, Defendant Tufano filed an objection to the R&R. (ECF No. 117.) The Court notes that no objection was filed on behalf of Plaintiff or Defendant Free Range.

For the reasons that follow, the Court adopts those portions of the R&R awarding damages for defamation and violations of 15 U.S.C. § 1125(d), as well as reasonable attorney's fees. The Court, however, vacates its prior determination of liability on Plaintiff's GBL § 349 claim (*see* ECF No. 59) and refers the matter back to MJ McCarthy for further consideration of that issue consistent with this Opinion and Order.

## STANDARD OF REVIEW

A magistrate judge may "hear a pretrial matter dispositive of a claim or defense" if so, designated by a district court. See Fed. R. Civ. P. 72(b)(1); accord 28 U.S.C. § 636(b)(1)(B). In such a case, the magistrate judge "must enter a recommended disposition, including, if appropriate, proposed findings of fact." Fed. R. Civ. P. 72(b)(1); accord 28 U.S.C. § 636(b)(1). Where a magistrate judge issues a report and recommendation,

> [w]ithin fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.

28 U.S.C. § 636(b)(1); *accord* Fed. R. Civ. P.72(b)(2), (3). However, "[t]o accept the report and recommendation of a magistrate judge, to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." *Wilds v. United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003) (quoting *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985)); *accord Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.") (quoting *Small v. Sec. of HHS*, 892 F.2d 15, 16 (2d Cir. 1989)); *see also* Fed. R. Civ. P. 72 advisory committee

note (1983 Addition, Subdivision (b)) ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.").

To the extent a party makes specific objections to an R&R, those objections must be reviewed de novo. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). In a de novo review, a district court must consider the "[r]eport, the record, applicable legal authorities, along with Plaintiff's and Defendant's objections and replies." *Diaz v. Girdish*, No. 04 CIV. 5061 (RJH), 2007 WL 187677, at *1 (S.D.N.Y. Jan. 23, 2007) (internal quotation marks omitted). By contrast, where a party offers only general or conclusory objections, or merely repeats arguments previously made, the court reviews the R&R for clear error. *Harris v. Burge*, No. 04 CIV.5066 HB FM, 2008 WL 772568, at *6 (S.D.N.Y. Mar. 25, 2008). The distinction turns on whether a litigant's claims are "clearly aimed at particular findings in the magistrate's proposal" or are a means to take a "'second bite at the apple' by simply relitigating a prior argument." *Singleton v. Davis*, No. 03 CIV 1446 LTS HBP, 2007 WL 152136, at *1 (S.D.N.Y. Jan. 18, 2007), *aff'd*, 308 F. App'x 560 (2d Cir. 2009).

## DISCUSSION

Here, it is undisputed that Defendant Tufano filed a timely objection. The Court has reviewed those objections and concludes that they lack substance, are meritless, and largely repeat arguments previously raised at the inquest hearing. Accordingly, the Court reviews the R&R for clear error and finds none. Even if the Court were to apply de novo review, it would reach the same result and adopt the findings of fact and conclusions of law set forth in the R&R, except as otherwise noted below.

Defendant Tufano contends that there has been no finding of liability and that there is a lack of support for the damages assessed. (Dft. Objection to R&R at 3, ECF No. 117.) The Court

3

disagrees. It is well settled in this Circuit that the entry of a default against a defendant does not automatically entitle a plaintiff to the entry of a default judgment but rather requires the Court to determine whether the factual allegations of the complaint, taken as true, establish liability as a matter of law. *See City of New York v. Mickalis Pawn Shop*, LLC, 645 F.3d 114, 137 (2d Cir.2011). A review of the operative complaint reveals that Plaintiff asserted three claims: defamation, trademark infringement pursuant to 15 U.S.C. § 1125, and violations of GBL §§ 148 and 349. The Court addresses each in turn.

### A. DEFAMATION

Defamation generally consists of the twin torts of slander and libel, spoken defamatory words are slander; and written defamatory words are libel. *Albert v. Loksen*, 239 F.3d 256, 265 (2d Cir. 2001) Under New York law, the elements of a slander cause of action are ''(i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) 'of and concerning' the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting slander per se, and (vii) not protected by privilege." *Sleepy's LLC v. Select Comfort Wholesale Corp.,* 909 F.3d 519, 528 (2d Cir. 2018) quoting *Albert v. Loksen*, 239 F.3d at 266. For a plaintiff to recover for a libelous defamatory publication, the plaintiff must establish: (1) a written defamatory statement of fact concerning the plaintiff, (2) publication to a third party, (3) fault, consisting either of negligence or actual malice depending on the status of the libeled party, (4) falsity of the defamatory statement, and (5) special damages or per se actionability. *Celle v. Filipino Rep. Enters. Inc.*, 209 F.3d 163 (2d Cir. 2000) (citing Restatement 2nd of Torts § 558).

Among the many allegations supporting Plaintiff's defamation claim are statements made on a November 7, 2019 YouTube video wherein Defendant Tufano states Dr. Saladino "[has] to copy me word for word;" Dr. Saladino "is willing to blatantly lie;" "[E]very single thing

4

mentioned" on Dr. Saladino's podcast "was ripped directly from [Defendant Tufano's] videos, that "All [Dr. Saladino] cares about is making money and promoting himself;" Dr. Saladino's "sole purpose is to steal other people's information;" "[N]ot one word that comes out of [Dr. Saladino's] mouth is an original thought;" Saladino "plagiarized" material from Tufano; "[Y]ou can pay this clown doctor [Dr. Saladino] a thousand dollars for a halfassed explanation of [Defendant Tufano's] videos;" and "[S]omeone has to pay for [Dr. Saladino's] Adderall prescription." (FAC ¶ 36.) On the same day in a second publication, Defendant Tufano stated Dr. Saladino pays people to downvote Defendant Tufano's videos on social media, and Dr. Saladino is a long-time drug user." (*Id.* ¶ 35.) These allegations are more than sufficient, at the default stage, to support the defamation claim. The allegations in the complaint, taken as true, satisfy each element of that claim. The statements plainly seek to impugn Plaintiff personally and to damage his professional and business reputation. Accordingly, the allegations adequately establish liability.

On the defamation claim, MJ McCarthy recommended that Plaintiff be awarded nominal damages of $1.00 and punitive damages in the amount of $52,500.00. (R&R at 12-16.) Because Defendant Tufano's statements were defamatory per se and courts are not permitted to accept speculative requests for damages, the Court assessed nominal damages in the amount of $1.00. (*Id.*) In New York, libelous or slanderous statements, deemed defamatory per se, which tend to disparage a person in the way of their office, profession or trade, do not require proof of special damages. *Celle v. Filipino Rep. Enters. Inc.*, 209 F.3d 163 (2d Cir. 2000). Even when no actual damages are proven, a plaintiff is entitled to recovery of at least nominal damages. Id at 179 citing *Van–Go Transport Co., Inc. v. New York City Bd. of Educ.*, 971 F.Supp. 90, 100 (E.D.N.Y.1997). Accordingly, an award of nominal damages in the amount of $1.00 was legally proper and permissible.

An award of punitive damages on a defamation claim may only be assessed "[w]here the

defendant's wrongdoing has been intentional and deliberate and has the character of outrage frequently associated with crime" *Prozeralik v. Cap. Cities Commc'ns, Inc*., 82 N.Y.2d 466, 478 (1993) quoting Prosser and Keeton, Torts § 2, at 9 [5th ed. 1984]). The intent required is that of malice, "common-law malice" — the "malicious, wanton, reckless, or [ ] willful disregard for another's rights." *Carroll v. Trump*, 731 F. Supp. 3d 626, 630 (S.D.N.Y. 2024), *aff'd*, 151 F.4th 50 (2d Cir. 2025) (quoting *Prozeralik v. Cap. Cities Commc'ns, Inc.,* 82 N.Y.2d at 479-80). The focus is on the defendant's mental state in relation to the plaintiff and the motive in publishing the falsity. *Carroll v. Trump*, 151 F.4th at 74. (2d Cir. 2025). Common-law malice may be established by either direct or circumstantial evidence which may include prior or subsequent defamatory statements, and circumstances indicating the existence of a rivalry. *Aquavit Pharmaceuticals, Inc. v. U-Bio Med, Inc*., No. 19CV3351VECRWL, 2023 WL 2396511, at *15 (S.D.N.Y. Feb. 17, 2023).

As reflected in the R&R, Defendant Tufano's defamatory statements were made for the sole purpose of damaging Plaintiff 's personal and business reputation. (R&R 13-15.) The statements generally include accusations that Plaintiff was unethical, criminal and morally reprehensible. For example, Defendant Tufano stated "all of his (referring to Plaintiff) work and social media page was being compromised by a crooked doctor that thinks he has enough money to match his own ego." (*See* Dft. MTD Opp. at 2, ECF No. 80.) That record is sufficient to support a finding of malice and, in turn, an award of punitive damages.

The primary purpose of punitive damages is to punish the defendant and to deter future similar misconduct. *See Lee v. Edwards*, 101 F.3d 805, 809 (2d Cir. 1996). When assessing punitive damages, the award should be reasonable. *See Payne v. Jones*, 711 F.3d 85, 96 (2d Cir. 2013) (courts "bear the responsibility to ensure that judgments as to punitive damages conform, insofar as reasonably practicable, to those desiderata and are not excessive.") Thus, courts

consider: 1) the degree of reprehensibility of the tortious conduct; (2) the ratio of punitive damages to compensatory damages; and (3) the difference between this remedy and the civil penalties authorized or imposed in comparable cases. *Lee v. Edwards*, 101 F.3d at 809. "Perhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575, 116 S. Ct. 1589, 1599 (1996); *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 165 (2d Cir. 2014). Courts may also consider the defendant's ability to pay. *See Koch v. Greenberg*, 14 F. Supp. 3d 247, 275 (S.D.N.Y. 2014), *aff'd*, 626 F. App'x 335 (2d Cir. 2015).

As detailed in the R&R, MJ McCarthy assessed $52,550.00, or more precisely $7,500.00 for each of the six defamatory videos published, and an additional $7,500.00, for the defamatory website created.[1] Given the egregious nature of the videos and the posting by Defendant Tufano, the Court agrees with MJ McCarthy's R&R assessment of punitive damages. (R&R at 15-16.) The award is proportionate to the misconduct reflected in the record and serves the twin aims of punishment and deterrence. Notably, punitive damages were only assessed as against Defendant Tufano partly because Defendant Free Range was purportedly dissolved.

B.  N.Y. GEN. BUS. LAW § 349

GBL § 349 provides in relevant part that "[d]eceptive acts or practices in the conduct of business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." To state a claim under GBL § 349, a plaintiff must allege that "(1) the challenged transaction was consumer-oriented'; (2) defendant engaged in deceptive or materially misleading acts or practices; and (3) plaintiff was injured by reason of defendant's deceptive or misleading conduct." *Denenberg v. Rosen*, 71 A.D.3d 187, 194 (1st Dep't 2010). "Under the statute that plaintiff is not required to establish defendant's intent to defraud or mislead." *Oswego Laborers'*

---

[1] There were additional defamatory statements alleged in the complaint and referenced at the inquest hearing.

*Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26 (1995). The statute contemplates actionable conduct that does not necessarily rise to the level of fraud but is premised on broad consumer-protection concerns. *See* O*swego,* 85 NY2d at 24-25.

In determining whether the alleged conduct is consumer-oriented, "New York courts may consider the sophistication of the parties and the amount of the transaction at issue-in other words, whether the parties need the protection' of the consumer-protection law." *Clayton v. Katz*, 2012 WL 4378035, at *5 (S.D.N.Y. Sept.25, 2012); *see e.g.*, *Denenberg v. Rosen*, 71 A.D.3d 187, 195 (1st Dep't 2010) (finding that a transaction involving a "sophisticated, individual private pension plan" and a "sophisticated" commodities trader "was not the modest type of transaction the statute was primarily intended to reach" [internal quotation marks omitted] ); *Kramer v. Lockwood Pension Services, Inc.,* 653 F. Supp. 2d 354, 385 (S.D.N.Y.2009) (dismissing GBL § 349 claim because "the parties include sophisticated insurance brokers and not ordinary consumers to whom the statute is directed"); *Phoenix Life Insurance Co. v. Irwin Levinson Insurance Trust II, and Jonathan S. Berck, as Successor Trustee*, 2009 WL 8491033 2009 N.Y. Slip Op 30383(U) (Sup. Ct. N.Y. Co. 2009) (noting the sophistication of the parties); *M & T Bank Corp. v. Gemstone CDO VII, Ltd.*, 23 Misc.3d 1105(A), *17 (Sup. Ct. Erie Co. 2009). The critical question… is whether the matter affects the public interest in New York, not whether the suit is brought by a consumer or a competitor. *Dfinity Found. v. New York Times Co.*, 702 F. Supp. 3d 167, 177 (S.D.N.Y. 2023), *aff'd*, No. 23-7838-CV, 2024 WL 3565762 (2d Cir. July 29, 2024) (quoting *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995)).

To establish a claim pursuant to GBL § 349, a plaintiff must prove three elements: 1) the challenged act or practice was consumer-oriented; 2) the act or practice was misleading in a material way; and 3) the plaintiff suffered injury as a result of the deceptive act. *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000) (citations omitted); *accord Spagnola v. Chubb Corp.*, 574 F.3d 64,

74 (2d Cir. 2009). A party injured as a result of an unfair and deceptive trade practice of another, may be awarded actual damages up to $1,000.00, provided the defendant acted willfully or knowingly. GBL § 349(h). Additionally, the statute permits an award of reasonable attorney fees.

The complaint's allegations appear, at least in broad outline, to touch each of the elements of a GBL § 349 claim. But that is not the end of the inquiry. The statute reaches only conduct that is consumer-oriented in the relevant sense, and the Court has serious reservations as to whether the conduct at issue here is more properly understood as part of a private commercial dispute between competitors rather than conduct affecting consumers at large. *See Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d at 264; *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54 (2d Cir. 2010) (the deceptive conduct must have a broader impact on consumers at large as opposed to harm to the plaintiff); *MaGee v. Paul Revere Life Ins. Co.*, 954 F. Supp. 582, 586 (E.D.N.Y. 1997) (the injury must be to the public generally, as distinguished from the plaintiff alone). Accordingly, the Court vacates its prior determination of liability on Plaintiff's GBL § 349 claim and refers the matter to MJ McCarthy to make such a determination.

### C. 15 U.S.C. § 1125

15 U.S.C. § 1125, creates a cause of action for trade dress infringement and false designation of origin under the Lanham Act. A trade dress is commonly referred to as the visual appearance of a product or its packaging, similar to a trademark, which may be registered or unregistered, and may include the design and appearance of a product as well as that of its container and all elements making up the total visual image by which the product is presented to customers. Lanham Trade-Mark Act, § 43(a), 15 U.S.C.A. § 1125(a); *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27 (2d Cir. 1995); see also *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 31 (2d Cir. 1995) (trade dress is "essentially [a product's] total image and overall appearance). To prevail on a claim for trade dress infringement and false designation of origin

under the Lanham Act, a plaintiff must establish two elements: (1) that he has a valid mark or symbol that is entitled to protection, and (2) that the defendant's conduct or actions are likely to cause confusion with that mark or symbol. *Shandong Shinho Food Indus. Co. v. May Flower Int'l, Inc.*, 521 F. Supp. 3d 222, 247 (E.D.N.Y. 2021) citing *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 84 (2d Cir. 2020). Prior to the close/completion of the inquest hearing, Plaintiff chose not to pursue his claim(s) for false and misleading representation under 15 U.S.C. § 1125(a). *See* ECF No. 108, Letter from Lewish & Lin. LLC, withdrawing claim.)

Plaintiff asserts a claim pursuant to 15 U.S.C. § 1125(d), commonly referred to as the Anti-cybersquatting Consumer Protection Act ("ACPA"). (FAC ¶¶ 54-60.) The statute is intended to prevent cybersquatting—that is, the bad-faith registration and use of domain names that trade on the goodwill of distinctive marks. *McAllister Olivarius v. Mermel*, 298 F. Supp. 3d 661, 668 (S.D.N.Y. 2018). Under the ACPA, a person is liable if he or she "has a bad faith intent to profit from that mark" and "registers, traffics in, or uses a domain name" that is identical or confusingly similar to a distinctive mark. 15 U.S.C. § 1125(d)(1)(A); *McAllister Olivarius v. Mermel*, 298 F. Supp. 3d at 668–69. To state a claim under the ACPA, a plaintiff must demonstrate that: (1) its mark was distinctive at the time the domain name was registered; (2) the allegedly infringing domain name is identical or confusingly similar to the plaintiff's mark; and (3) the defendant had a bad-faith intent to profit from that mark. *See Gioconda L. Grp. PLLC v. Kenzie*, 941 F. Supp. 2d 424 (S.D.N.Y. 2013) (internal citations omitted).

Plaintiff alleges, *inter alia*, that he operates a San Diego-based business which offers, on a fee basis, private consultation services to consumers regarding the use of a carnivore diet to treat medical conditions and lead better lives. (FAC ¶¶ 20.) He operates his business under the "PAUL SALADINO" Mark. (*Id.* ¶ 21.) His business caters to four (4) groups of clients/customers: (1) YouTube viewers who generate advertising revenue through the YouTube platform; (2) third party

10

social media podcasters who desire Dr. Saladino aka Paul Saladino audio, video, and real-time interactive content; (3) purchasers of Dr. Saladino's merchandise, including a line of nutritional supplements; and (4) patients who desire private consultation for the treatment of health issues. (*Id.* ¶ 20.)

Plaintiff asserts he has used the PAUL SALADINO Mark continuously and extensively in connection with the marketing of his business. (FAC ¶ 21) As a result, Plaintiff has established a reputation and goodwill in his personal name PAUL SALADINO separately as a trademark. (*Id.*) His PAUL SALADINO Mark is unique, distinctive, and has acquired distinctiveness through its association with Dr. Saladino's business as advertised, marketed and through services sold throughout the United States.

The First Amended Complaint further alleges that Plaintiff's YouTube channel has more than 67,000 subscribers and his Twitter account more than 40,000 followers. (FAC ¶ 22.) In connection with his business, Plaintiff published a book, *The Carnivore Code*, and recently released a second edition. (*Id.*) Defendants similarly maintain a presence on social media, including on YouTube and Twitter, and publish videos and written statements to promote their own fee-based medical nutritional therapy services regarding the use of a carnivore diet to treat medical conditions. (*Id.* ¶ 23.) Defendant Tufano, however, is not a doctor and is not licensed to provide medical nutritional therapy. (*Id.* ¶ 26.) Plaintiff alleges that he and Defendants therefore compete for consumers and viewers in the same market. (*Id.* ¶ 27.)

Plaintiff also alleges that Defendant Tufano engaged in a malicious campaign to spread false information and attack Dr. Saladino's character and reputation in order to harm Plaintiff's business and benefit his own competing enterprise. (FAC ¶ 29.) As part of that campaign, Defendant Tufano allegedly registered the domain name <PaulSaladino.com> and directed it to a website containing, inter alia, sexually graphic and homophobic images of Dr. Saladino, as well

as links to defamatory videos published on Defendant Tufano's YouTube channel. (*Id.* ¶ 31.) According to the complaint, this conduct was undertaken to divert consumers and promote Defendants' competing business interests. (*Id.*) Taken together, these allegations are sufficient to establish liability under the ACPA.

A prevailing party asserting an ACPA claim may elect "statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just." 15 U.S.C. § 1117(d); *see also Tiffany (NJ) LLC v. Forbse*, No. 11 Civ. 4976 (NRB), 2015 WL 5638060, at *2 (S.D.N.Y. Sept. 22, 2015). In this Circuit, district courts enjoy considerable discretion when assessing statutory damages. See *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 143 (2d Cir. 2010); *Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1116 (2d Cir. 1986). When determining statutory damages, courts weigh: (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties. *Bryant v. Media Right Prod., Inc.*, 603 F.3d at 144 *citing N.A.S. Import. Corp. v. Chenson Enter*, Inc., 968 F.2d 250, 252–53 (2d Cir.1992). Taking into consideration the relevant factors, MJ McCarthy determined that $100,000.00, the statutory maximum, was warranted. (R&R at 9-10.) This Court agrees.

As previously referenced, Defendant's conduct has been found to be willful and malicious. Not only were Defendant's actions intended to impugn Plaintiff's personal and business reputation but given the extreme nature of some of the statements, they are best described as salacious attacks. Weighing the relevant factors, in particular, the Defendant's state of mind, the effect the award will have on Defendant Tufano and third parties as a future deterrence, Plaintiff's loss of revenue as a result of Defendants' wrongful diversions and the conduct and attitude of the parties

(predominantly Defendant Tufano), the imposition of the maximum statutory award, $100,000.00, is warranted.[2]

### D. ATTORNEY'S FEES

15 U.S.C.A. § 1117(a), provides in relevant part that, whenever there is a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, or a violation under 15 USC 1125(d), the court in exceptional cases may award reasonable attorney fees to the prevailing party. "Exceptional cases are those where acts of infringement can be characterized as malicious, fraudulent, deliberate, or willful." *Pfizer Inc. v. Sachs*, 652 F. Supp. 2d 512, 527 (S.D.N.Y. 2009) quoting *Weight Watchers Int'l, Inc. v. Stouffer Corp.*, 744 F.Supp. 1259, 1289 (S.D.N.Y.1990) (internal citations omitted). Before granting attorney fees in "exceptional cases," the Second Circuit requires a showing of "fraud or bad faith." *Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*, 166 F.3d 438, 439 (2d Cir. 1999) quoting *Twin Peaks Productions, Inc. v. Publications International, Ltd.*, 996 F.2d 1366, 1383 (2d Cir. 1993).

Here, there is a sufficient basis to support the finding of an exceptional case, and there is ample evidence of willful, malicious conduct, and bad faith on the part of Defendant Tufano. Defendant Tufano published false and salacious statements. He posted homophobic and sexually graphic images to attack and assail Plaintiff's personal and business reputation. Defendant Tufano

---

[2] Courts within and outside this district have imposed the maximum statutory award where a defendant's conduct was malicious. *See Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283, 288 (2d Cir. 1999) (affirming an award of $100,000.00 in statutory damages—the maximum at the time—where the defendant continued using protected program materials despite prior court rulings and an injunction prohibiting further use); *City of Carlsbad v. Shah*, 850 F. Supp. 2d 1087 (S.D. Cal. 2012) (awarding $100,000 in statutory damages under the ACPA where the defendant registered multiple domain names identical or confusingly similar to plaintiff's marks and continued using them after the court ruled that plaintiff owned the marks); *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567 (E.D. Pa. 2002) (awarding $100,000.00 where the defendant used the domain name "louisvuitton-replicas.com" to sell counterfeit goods in violation of the ACPA); *CrossFit, Inc. v. Jenkins*, 69 F. Supp. 3d 1088 (D. Colo. 2014) (awarding the statutory maximum where the defendant registered a domain name incorporating plaintiff's mark with a bad-faith intent to profit and divert customers). The Court further notes that, by Order dated January 30, 2025, this Court directed Defendants to remove the PaulSaladino.com website. (ECF No. 59.) Despite this clear directive, Defendant Tufano purportedly continued posting additional defamatory statements after the Court issued its Order.

impermissibly used the "paulsaladino.com" (Plaintiff's Mark) website to malign Plaintiff and steer potential clients and consumers away from his perceived competitor. *See Soter Techs., LLC v. IP Video Corp.*, 523 F. Supp. 3d 389, 403 (S.D.N.Y. 2021) (The purpose of the ACPA is to provide clarity in the law for trademark owners by prohibiting the bad-faith and abusive registration of distinctive marks as Internet domain names with the intent to profit from the goodwill associated with such marks.); *Amplify Car Wash Advisors LLC v. Car Wash Advisory LLC*, 770 F. Supp. 3d 625, 638 (S.D.N.Y. 2025) (When determining bad faith, the court may consider whether the defendant sought to capitalize on the plaintiff's reputation and goodwill and on any confusion between his and the senior user's product.). The Second Circuit has permitted a prevailing party to recover for the "total attorney's fees incurred in a litigation containing both Lanham Act claims (such as 15 USC 1125(d)) and non-Lanham Act claims (such as defamation) when the claims are "so intertwined that it is impossible to differentiate between." *Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d at 531–32 (2d Cir. 2018) (internal citations omitted).

District courts are tasked with using the prevailing hourly rate in the district where the court sits, in calculating the lodestar, the presumptively reasonable fee. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008) citing *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir.1983). The burden is on the party moving for attorney's fees to justify the hourly rates sought. *Melo v. Milagro Grocery Corp.*, 750 F. Supp. 3d 38 (E.D.N.Y. 2024). As reflected in the R&R, Plaintiff demonstrated entitlement to attorney's fees and cost in the amount of $81,381.55 ($76,514.00 in attorney's fees and $4,867.55 in costs). (R&R at 16-23.) In determining reasonable fees, MJ McCarthy considered the respective background and experience of each of Plaintiff's attorneys and legal staff (paralegals) who worked on this action, along with the number of hours. (*Id.*); *See N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983) (an attorney

seeking court-ordered compensation is required to maintain and present contemporaneous documented time records in support of the application)." The total number of hours spent on legal work was 217. (*Id.* at 18-20.) Based on the award recommended, MJ McCarthy applied the lower hourly rate suggested and found to be compatible with the prevailing hourly rate in the district, for each attorney and para-professional who worked on the case.[3] (*Id.* at 19-22.) Plaintiff also submitted proof of the costs incurred as reflected in the timekeeping records presented to the Court. (*Id.* at 18-20.) The Court finds no error in that determination and adopts it in full.

## CONCLUSION

For the following reasons, the Court adopts those portions of the R&R which awarded damages for defamation in the amount of $1.00 in nominal damages and $52,500.00 in punitive damages, statutory damages for violating 15 U.S.C. § 1125(d) in the amount of $100,000.00, reasonable attorney's fees in the amount of $76,514.00, and cost in the amount of $4,867.55. The Court vacates its prior determination finding liability pursuant to GBL § 349 (*see* ECF No. 59) and refers the matter back to MJ McCarthy for further consideration on the issue of liability on Plaintiff's GBL § 349 claim(s) and whether an award of damages is legally warranted.

Dated: March 6, 2026
      White Plains, NY

SO ORDERED:

NELSON S. ROMÁN
United States District Judge

---

[3] Plaintiff was represented by the law firm Lewis & Lin. Counsel submitted billing records for six timekeepers reflecting a total of 217 hours worked. (*See* Docket No. 83-1). Partner David D. Lin and fifth-year associate Rachel Ann Niedzwiadek served as the primary attorneys on the case. (Docket No. 83 ¶ 8). Mr. Lin has been practicing law since 2003 and focuses on Internet-related disputes and intellectual property litigation in state and federal courts. (*Id.* ¶ 10). Ms. Niedzwiadek has been an associate at Lewis & Lin since 2022 and has experience in intellectual property, defamation, First Amendment, and commercial litigation matters. (*Id.* ¶ 11). Associate Michael D. Cliento also worked on this matter and has experience in intellectual property and commercial litigation. (*Id.* ¶ 12). Yuanjun Zhu, a first-year associate at the firm, worked on the case until 2021. (*Id.* ¶ 13). The firm's paralegals, Nellie Gong and Joshua Machlin, both have more than fifteen years of experience. (*Id.* ¶¶ 14–15). Plaintiff requested the following hourly billing rates: $450 to $565 for partner David D. Lin; $295 to $325 for associate Michael D. Cliento; $270 to $340 for fifth-year associate Rachel Ann Niedzwiadek; $250 for associate Yuanjun Zhu; $195 to $210 for paralegal Nellie Gong; and $180 for paralegal Joshua Machlin. (*Id.* ¶ 31).